ALBERT H. LINDEKE and Others v. SCOTT COUNTY CO-OPERATIVE COMPANY and Others.[1]

July 17, 1914.

Nos. 18,682—(201).

**Insolvent corporation — enforcement of liability of stockholders — books of account.**

In this action to enforce the liability of stockholders in a corporation, it is *held:*

(1) Whether a deed of assignment or trust deed executed by the corporation was authorized by the directors at a meeting properly called for that purpose, or by a quorum of the board, is immaterial under the circumstances of this case.

(2) Certain rulings of the trial court on the admission of evidence were correct.

(3) It was not error to receive in evidence a certain book of the corpora-

[1] Reported in 148 N. W. 459.

tion as proof of who were its stockholders. The evidence was sufficient to sustain the findings as to who were stockholders.

(4) When one party offers in evidence the books of account of the other party as admissions, it is not necessary to lay the statutory foundation required where a party offers his own books of account. It is sufficient if it appears that the books offered are the books of account of the party, regularly kept in its business.

(5) Certain claims against the corporation by certain of its directors for money furnished the corporation to discount its bills *held* valid claims. If originally invalid because in excess of the amount the directors had authority to borrow for the corporation, the evidence shows a ratification by the stockholders.

(6) A claim *held* a valid obligation of the corporation, though originally it was represented by excess shares of the corporation, it appearing that the original transaction was repudiated, and that the claim was thereafter a money judgment against the corporation.

Action in the district court for Scott county by the partners composing the firm of Lindeke, Warner & Sons against the Scott County Co-operative Co. and its shareholders to sequester the assets of the defendant company, to appoint a receiver and ascertain the individual liability of the defendant stockholders for the indebtedness of the defendant company to the plaintiffs. The case was tried before Morrison, J., who made findings, appointed a receiver and directed an assessment equal to the par value against each share of capital stock. From an order denying their motion for a new trial, certain of the defendants appealed. Affirmed.

*F. J. Leonard* and *F. C. Irwin,* for appellants.
*Todd & Kerr,* for respondents.

BUNN, J.

This action was brought by plaintiffs, judgment creditors of defendant Scott County Co-Operative Co., to enforce the constitutional liability of its stockholders. There was a decision in favor of plaintiffs sequestering the property of the company, appointing a receiver, and assessing each of some 70 stockholders an amount equal to the par value of his stock, or $100. Some 20 of the stockholders assessed moved for a new trial, and from an order denying their motion appealed to this court.

The assignments of error challenge numerous rulings on the admission of evidence, as well as certain findings of fact, the conclusions of law, and the order denying a new trial. It is necessary, in order to understand the contentions made, to state the facts. The Scott County Co-Operative Co. was organized in 1907 as a corporation under the provisions of R. L. 1905, c. 58, for the purpose of carrying on a general merchandise business at Jordan, Minnesota. It was not a success financially. It continued business until July, 1911, when its troubles reached a point where something had to be done to appease clamoring creditors. A meeting of the board of directors was called to consider ways and means of arriving at a settlement with the creditors, and to meet two representatives of the creditors. At this meeting there were four directors present, though all seven were notified. After attempting without success to reach a settlement, a motion was carried to authorize and instruct the proper officers of the corporation to execute a general assignment for the benefit of its creditors to John P. Galbraith, Manager, of the Northwestern Jobbers Credit Bureau, of St. Paul. In conformity with this resolution, the company, by its proper officers, executed a "trust deed" to Galbraith, by which it assigned and conveyed to him all of its property for the benefit of creditors joining therein. Galbraith took possession of the property and converted it into cash, realizing $6,302.02. All of the creditors filed consents to the trust deed and joined therein; their claims amounted to $14,785.47. The trustee distributed the cash realized proportionally among the creditors. After making these payments, and paying certain preferred claims and the expenses of the proceedings, there remained in the hands of the trustee the sum of $4.91.

Plaintiffs were creditors of the corporation. In August, 1912, they recovered a judgment against it for $1,551.36. The judgment was entered and docketed in Ramsey county, and a transcript issued to Scott county. An execution was issued to the sheriff of Scott county, and by him returned unsatisfied. Thereupon this action was commenced. The court found the above facts, and that the company was insolvent; that the sale by the trustee was fair and equitable; that some 70 named defendants were stockholders,

each owning stock of the par value of $100, a certificate for one share being owned by each. The conclusions of law were in substance as stated above.

1. Defendants attack the validity of the trust deed to Galbraith. Their points in this regard are: (1) That the special meeting of directors called to meet and consult with two representatives of the creditors of said company about ways and means to make settlement with said creditors had no power to authorize the assignment or trust deed; (2) that there was no quorum of the directors present at the meeting; (3) that the resolution authorized an assignment for the benefit of creditors, but not a trust deed. We regard these points as wholly immaterial to any of the issues in this case. There is no doubt that the corporation was hopelessly insolvent, or that the trustee disposed of its assets to the best advantage, or that they were all disposed of. Certain questions as to the distribution of the fund realized will be noticed later.

2. Defendants insist that there was no sufficient evidence of plaintiff's judgment, or of the execution. They claim that the judgment roll, which was received in evidence over objection, was no proof of the rendition of the judgment; that the only proper evidence would have been the judgment book, or a transcript thereof. This claim is without merit. In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L.R.A. 287, 43 Am. St. 514. The points as to the execution are that it was not under seal, and that it did not appear that the judgment was docketed in Scott county. The record does not sustain defendants' claim as to the facts. Both judgment roll and execution were properly received in evidence. It is contended that there was no competent proof that the judgment was docketed in Scott county. The transcript from Ramsey county was received in evidence with proof that it was and had been since long before the commencement of this action on file in the office of the clerk of the district court for Scott county. The objection was not specifically directed to the point that the judgment docket of the Scott county clerk was not offered. It is presumed that the clerk docketed the judgment on receipt of the transcript. We hold the objection not well taken, and the proof sufficient on this point. A further contention in relation

to plaintiff's judgment should be noticed here; it is claimed that the court erred in excluding evidence offered to prove that it was procured through fraud and collusion. There is no substance to this claim, as the evidence offered had no fair tendency to prove fraud. The contentions thus far noted go to the right of plaintiffs to bring this action to enforce the liability of stockholders.

3. The next claim is that the proof to show who were stockholders in the corporation was insufficient. There was received in evidence a book of the corporation evidently used mainly as an invoice book. At the top of page 30 is the heading "Stockholders' Register," and under this on the same and the following page is what purports to be a list of the stockholders with the amount of stock held by each. It is clear that this was a book of the corporation, used in its business, and the evidence was that the list was copied into the book by the secretary from the original subscription lists. In addition to this book, the secretary and the president, who had personal knowledge of who were the stockholders, testified in detail, identifying as stockholders, with a few exceptions, the persons whose names were on the list. This testimony was given with the express consent of defendants' counsel. They can hardly sustain the claim now made that the original lists should have been introduced or a legal excuse given for secondary evidence. Furthermore it sufficiently appeared that the original subscription lists had been lost. There was no error in receiving the "Stockholders' Register" in evidence, or in admitting the parol evidence to show who were stockholders, and we hold that the proof was sufficient to sustain the findings in this regard.

4. There is a claim that the court erred in admitting the books of account of the corporation offered to show the amount of the claims of creditors. It is urged that the necessary foundation was not laid. It was sufficiently shown that they were the books of the defendant corporation, regularly used as such in its business. The statute (G. S. 1913, § 8437) prescribes the foundation that must be laid when a party offers in evidence his own books of account, as evidence in his own favor, but it has no application whatever to a case like this, where the books of one party to a lawsuit are offered by the other as admissions. The language of the statute, "whenever a party

\* \* \* shall produce at the trial *his* account books," etc., makes it clear that it is not necessary to make the preliminary proof specified when the books offered are the books of the other party. It was therefore not necessary that plaintiffs prove that the entries were made at the time of the transactions, or that they were true and correct. The foundation was sufficient, and the books of account were properly received.

5. The next claim is that the payment by the trustee of dividends on certain claims was improper because the claims were illegal. Certain directors of the corporation filed with the trustee claims against it aggregating $5,500, and a 35% dividend was paid on these claims. Conceding that if such claims were illegal it might have a material bearing on the solvency of defendant, or on the amount of its liabilities, we are of the opinion that the claims were legal outstanding obligations of the company. In 1909 the company owed large sums for merchandise purchased, and was anxious to discount the bills. The directors resolved to borrow $4,500 for this purpose, but the bank refused to take the note of the corporation. The directors executed their individual notes aggregating the sum desired, and the bank loaned them the money. They expended it in paying the bills for merchandise. The argument is that the claims of the directors for the moneys so advanced to the corporation are illegal and void because they borrowed in excess of 25% of the capital stock of the corporation. The same point is made as to an item of $1,000 similarly borrowed by four of the directors and furnished to the corporation in 1911. If these sums can be said to have been borrowed by the corporation acting through the board of directors, so as to make the transaction beyond the power of the directors, it is a sufficient answer to the contention that the claim of the directors is illegal to say that it appears that the stockholders afterwards assented to the transactions, and ratified the acts of the directors. We hold that the claims are valid, and that dividends were properly paid thereon.

5. Defendants contend that a claim of one Elizabeth Merget, against the corporation was void because she was the holder of excess shares of stock. When the company was formed it purchased a cer-

tain store, in which Elizabeth Merget, then a minor, owned a four-tenths interest. Her mother, without being appointed guardian, sold this interest, taking excess shares of stock in payment. When the daughter became of age she repudiated the transaction and brought suit to recover the value of her four-tenths interest. The action was compromised for $1,360.94, and judgment against the corporation entered for that amount. It is this judgment that constitutes the claim on which dividends were paid. It is clear that the creditor was not the holder of excess shares of stock, as the action brought by her and the judgment entered therein, wiped out the original transaction, and made the claim a liability of the corporation that was not represented by excess shares.

This disposes of all the assignments of error that are urged in the brief or argument of defendants' counsel. We are satisfied that there was no prejudicial error, if error at all, in any of the court's rulings on the admission of evidence. The evidence is amply sufficient to sustain the findings on all material points, and it is impossible to see how the stockholders in this unfortunate concern can hope to escape the liability imposed by the Constitution.

Order affirmed.